UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

─────────────────────────────────

MARBIN RODRIGUEZ,

               Petitioner,

     v.

MERRICK GARLAND, *United States Attorney General*,[1] *et al.*,

            Respondents.[2]

─────────────────────────────────

        21-CV-373-LJV
        DECISION & ORDER

Marbin Rodriguez has been detained in the custody of the United States Department of Homeland Security since June 5, 2020—about 17 months. Docket Item 1 at 4; Docket Item 4-1 at ¶ 10. On March 10, 2021, Rodriguez filed a *pro se* petition for a writ of habeas corpus under 28 U.S.C. § 2241, challenging the validity of his detention at the Buffalo Federal Detention Facility ("BFDF") in Batavia, New York. Docket Item 1. On May 3, 2021, the respondents answered the petition, Docket Item 4, and on May 20, 2021, Rodriguez replied, Docket Item 5.

─────────────────────

[1] The caption has been updated under Federal Rule of Civil Procedure 25(d). The Clerk of the Court shall substitute Merrick Garland, United States Attorney General, for Monty Wilkinson, Acting Attorney General, on the docket.

[2] In its memorandum of law, the government argues that the only appropriate respondent in this matter is Jeffrey Searls, "as he is the person with direct control over the detention of [the] petitioner." Docket Item 4-4 at 31. "Because resolution of who is the proper respondent will not affect the disposition of this petition, the Court will not address it further." *Khemlal v. Shanahan*, 2014 WL 5020596, at *2 n.3 (S.D.N.Y. Oct. 8, 2014). It is clear, at the very least, that Searls "has the *immediate custody* of the party detained, with the power to produce the body of such party before the court or judge, [so] that he may be liberated if no sufficient reason is shown to the contrary." *Rumsfeld v. Padilla*, 542 U.S. 426, 435 (2004) (emphasis in original) (quoting *Wales v. Whitney*, 114 U.S. 564, 574 (1885)).

For the reasons that follow, this Court grants Rodriguez's petition in part.

## FACTUAL AND PROCEDURAL BACKGROUND

The following facts, taken from the record, come largely from filings with the United States Department of Homeland Security ("DHS"), Immigration and Customs Enforcement ("ICE").

Rodriguez is a native and citizen of Honduras.  Docket Item 4-1 at ¶ 5.  He says that he entered the United States in March 1999.  Docket Item 1 at 4.  Rodriguez was arrested on June 10, 2017, after an encounter with a taxi driver.  Docket Item 4-1 at ¶ 6. Rodriguez subsequently was convicted of criminal possession of a weapon in the second degree, menacing in the second degree, and criminal possession of a forged instrument in the second degree.  *Id.* ¶ 7; Docket Item 4-2 at 10-11.  On July 2, 2019, he was sentenced to three years and six months' imprisonment, 364 days' imprisonment, and one to three years' imprisonment, respectively, on those charges, with the sentences to run concurrently.  Docket Item 4-1 at ¶ 7; Docket Item 4-2 at 10.

DHS issued an immigration detainer on January 10, 2020, requiring that DHS be notified if Rodriguez were released from the custody of the New York State Department of Corrections and Community Supervision.  Docket Item 4-1 at ¶ 9.  That same day, DHS also issued a "Notice to Appear," charging that Rodriguez was subject to removal from the United States under various provisions of the Immigration and Nationality Act, 8 U.S.C. §§ 1011-1537.  Docket Item 4-2 at 1-3.  More specifically, DHS charged that Rodriguez was subject to removal as a noncitizen present in the United States without having been admitted or paroled, *see* 8 U.S.C. § 1182(a)(6)(A)(i), and as a noncitizen

who had been convicted of a crime involving moral turpitude, *see id.*

§ 1182(a)(2)(A)(i)(I).  *Id.* at 3.

Rodriguez was transferred to DHS custody on June 5, 2020, and he then was
notified that he would be detained pending resolution of his removal proceedings.
Docket Item 4-1 at ¶ 10; Docket Item 4-2 at 9.  On August 13, 2020, an Immigration
Judge ("IJ") ordered Rodriguez removed to Honduras and denied Rodriguez's
application for deferral under the Convention Against Torture.  Docket Item 4-1 at ¶ 11;
Docket Item 4-2 at 4-5, 15-20.  The IJ also noted that Rodriguez's claims for asylum and
withholding of removal were withdrawn.  Docket Item 4-1 at ¶ 11; Docket Item 4-2 at 4.
On February 11, 2021, the Board of Immigration Appeals ("BIA") dismissed Rodriguez's
appeal of the IJ's decision.  Docket Item 4-1 at ¶ 12; Docket Item 4-2 at 6-8.

DHS subsequently contacted the Consulate General of Honduras to "request[]
that [the Consulate] issue a passport or other suitable travel document" to Rodriguez to
effect his removal.  Docket Item 4-1 at ¶ 13; Docket Item 4-2 at 13-14.  Rodriguez
refused to participate in an interview with the Consulate on February 17, 2021, and was
consequently served with a Form I-229(a), "Warning for Failure to Depart."  Docket Item
4-1 at ¶ 14-15.  Rodriguez again refused to participate in an interview with the
Consulate on March 31, 2021, and he was served with a second Form I-229(a).  *Id.* at
¶¶ 16-17.  On April 1, 2021, Rodriguez was served with a Notice of Failure to Comply
with removal, *see* 8 C.F.R. § 241.4(g), which informed Rodriguez that his "removal
period [was] extended" because of his "fail[ure] to comply with ICE's efforts to remove
[him]," *see* Docket Item 4-2 at 36-38.

On April 16, 2021, Rodriguez filed a petition for review and a motion to stay his removal with the United States Court of Appeals for the Second Circuit.  Docket Item 4-1 at ¶ 19.  That petition and motion remain pending.  *See Rodriguez v. Garland*, Case No. 21-6235 (2d Cir.).

## DISCUSSION

## I.   HABEAS PETITION

28 U.S.C. § 2241 "authorizes a district court to grant a writ of habeas corpus whenever a petitioner is 'in custody in violation of the Constitution or laws or treaties of the United States.'"  *Wang v. Ashcroft*, 320 F.3d 130, 140 (2d Cir. 2003) (quoting 28 U.S.C. § 2241(c)(3)).  The government maintains that Rodriguez is validly detained under 8 U.S.C. § 1231(a) as a noncitizen with a "final order of removal"; alternatively, the government argues that "even if [Rodriguez's] detention is deemed pre-final [] pursuant to 8 U.S.C. § 1226(c), his continued detention [is] not [] unconstitutional."  Docket Item 4-4 at 1.

Rodriguez disagrees on two grounds.[3]  First, Rodriguez argues that his detention violates the Due Process Clause of the Fifth Amendment of the United States Constitution.  Docket Item 1 at 8.  The Court construes this claim as arguing that Rodriguez's detention violates his rights to both substantive and procedural due process.  Second, Rodriguez argues that his ongoing detention violates the Excessive Bail Clause of the Eighth Amendment.  *Id.* at 8-9.

---

[3] Because Rodriguez is proceeding *pro se*, this Court holds his submissions "to less stringent standards than formal pleadings drafted by lawyers."  *See Haines v. Kerner*, 404 U.S. 519, 520 (1972).

## II.    STATUTORY CHALLENGE

This Court begins by considering the statutory basis for Rodriguez's detention. The government argues that Rodriguez's detention is governed by 8 U.S.C. § 1231(a) because Rodriguez's order of removal became final after the BIA dismissed his administrative appeal on February 11, 2021.  *See* Docket Item 4-4 at 8.  Rodriguez argues that upon filing a petition for review and a motion to stay his removal in the Second Circuit, he "return[ed] to 1226(c) custody."[4]   Docket Item 5 at 2.  This Court agrees with Rodriguez.[5]

"Broadly speaking, section 1226 governs the detention of immigrants who are not immediately deportable."  *Hechavarria v. Sessions*, 891 F.3d 49, 57 (2d Cir. 2018). Section 1231, on the other hand, "addresses the 'removal period' for immigrants facing deportation."  *Id*. at 53.  "[T]he 'removal period' [is] the term used in the statute to describe the 90-day period following an order of removal during which 'the Attorney General shall remove the [noncitizen].'"  *Id*. at 54 (quoting 8 U.S.C. § 1231(a)(1)(A)).

The statute explicitly defines the beginning of the removal period as occurring "on the latest of the following:

(i) The date the order of removal becomes administratively final.

---

[4] Because this Court and Rodriguez agree that he now is detained under section 1226, the Court rejects any argument raised in Rodriguez's petition that his detention violates section 1231(a) as interpreted by the United States Supreme Court in *Zadvydas v. Davis*, 533 U.S. 678 (2001).

[5] The government asserts that if Rodriguez is not held under 8 U.S.C. § 1231(a), he is held under 8 U.S.C. § 1226(c) due to his criminal history.  *See* Docket Item 4-4 at 1, 22.  Rodriguez agrees that he now is held under section 1226(c).  Docket Item 5 at 2. For the purposes of this decision and order, this Court likewise concurs that the respondents are holding Rodriguez under section 1226(c).

> (ii) If the removal order is judicially reviewed and if a court orders a stay of the removal of the [noncitizen], the date of the court's final order.
>
> (iii) If the [noncitizen] is detained or confined (except under an immigration process), the date the [noncitizen] is released from detention or confinement."

*Id*. at 54-55 (quoting 8 U.S.C. § 1231(a)(1)(B)).

Rodriguez has asked the Second Circuit to review the BIA's decision and to stay his removal.  Under DHS's forbearance agreement with the Second Circuit, "DHS will not remove any [noncitizen] who has requested a stay of removal with a petition for review of an immigration order of removal unless a government motion opposing the stay is granted by the court or the [noncitizen's] stay motion is otherwise denied." *Sankara v. Whitaker*, 2019 WL 266462, at *4 (W.D.N.Y. Jan. 18, 2019).  This Court accordingly has held that until a Second Circuit panel rules on a noncitizen's request for a stay of his removal, the "forbearance agreement amounts to a court ordered stay of the removal of the [noncitizen]."  *See Hemans v. Searls*, 2019 WL 955353, at *3 (W.D.N.Y. Feb. 27, 2019); *Sankara*, 2019 WL 266462, at *4.

In other words, this Court construes the forbearance agreement as effectively rendering Rodriguez's removal stayed under 8 U.S.C. § 1231(a)(1)(B)(ii).  Therefore, even if the respondents are correct that Rodriguez previously was detained under section 1231(a), he now is detained under section 1226(c).

## III.    DUE PROCESS

Rodriguez alleges that his continued detention violates the Due Process Clause. *See* Docket Item 1 at 1-2.  The Fifth Amendment's Due Process Clause forbids the federal government from depriving any "person . . . of . . . liberty . . . without due process of law."  U.S. Const. amend. V.  The Supreme Court "has held that the Due

Process Clause protects individuals against two types of government action." *United States v. Salerno*, 481 U.S. 739, 746 (1987). "So-called 'substantive due process' prevents the government from engaging in conduct that 'shocks the conscience' . . . or interferes with rights 'implicit in the concept of ordered liberty.'" *Id.* (citations omitted). "When government action depriving a person of life, liberty, or property survives substantive due process scrutiny, it must still be implemented in a fair manner." *Id.* "This requirement has traditionally been referred to as 'procedural' due process." *Id.*

"Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas*, 533 U.S. at 690. "[G]overnment detention violates that Clause unless the detention is ordered in a *criminal* proceeding with adequate procedural protections . . . or, in certain special and narrow nonpunitive circumstances, . . . where a special justification, such as harm-threatening mental illness, outweighs the individual's constitutionally protected interest in avoiding physical restraint." *Id.* (emphasis in original) (citations and internal quotation marks omitted). Other than those unique, special, and narrow circumstances, "[o]nly a jury, acting on proof beyond a reasonable doubt, may take a person's liberty. That promise stands as one of the Constitution's most vital protections against arbitrary government." *United States v. Haymond*, 139 S. Ct. 2369, 2373 (2019).

"[Noncitizens], even [noncitizens] whose presence in this country is unlawful, have long been recognized as 'persons' guaranteed due process of law by the Fifth . . . Amendment[]." *Plyer v. Doe*, 457 U.S. 202, 210 (1982); *see also Shaughnessey v. United States ex rel. Mezei*, 345 U.S. 206, 212 (1953) ("It is true that [noncitizens] who

have once passed through our gates, even illegally, may be expelled only after proceedings conforming to traditional standards of fairness encompassed in due process of law.").  At the same time, Congress has "broad power over naturalization and immigration, [permitting it to] make[] rules that would be unacceptable if applied to citizens."  *Demore v. Kim*, 538 U.S. 510, 521 (2003) (quoting *Mathews v. Diaz*, 426 U.S. 67, 79-80 (1976)).

### A.    Substantive Due Process

The Court construes Rodriguez's petition as arguing that his detention violates his right to substantive due process.  Rodriguez has been in DHS custody since June 2020—about 17 months.  Docket Item 1 at 4; Docket Item 4-1 at ¶ 10.  But this Court cannot say that detention that long violates substantive due process.  *See Sanusi v. I.N.S.*, 100 F. App'x 49, 51 (2d Cir. 2004) (summary order) (determining that six-year detention did not violate due process).  Indeed, detention under section 1226 may serve the government's compelling interests in both "preser[ving] the government's ability to later carry out its broader responsibilities over immigration matters," *Doherty v. Thornburgh*, 943 F.2d 204, 211 (2d Cir. 1991), and preventing crime by arrestees who pose a danger to the safety of the community, *see Salerno*, 481 U.S. at 749.  Although there comes a time when the length of a noncitizen's detention pending removal violates due process regardless of the procedural protections afforded, *see Salerno*, 481 U.S. at 747 n.4, that time has not yet come here.

### B.    Procedural Due Process

Rodriguez also challenges the procedural safeguards that apply to his continued detention.  Docket Item 1 at 4-8.  The Due Process Clause is not offended by the

mandatory detention of noncitizens for the "*brief period necessary* for their removal proceedings," *Demore*, 538 U.S. at 513 (emphasis added), but may be violated by detention beyond that "brief" period, depending on the balance of the individual's and the government's interests, *see, e.g.*, *id.* at 532 (Kennedy, J., concurring) ("[A] lawful permanent resident . . . could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention bec[omes] unreasonable or unjustified."); *see also Landon v. Plasencia*, 459 U.S. 21, 34 (1982) ("The constitutional sufficiency of procedures provided in any situation, of course, varies with the circumstances.").

For that reason, this Court "has evaluated procedural due process challenges to immigration detention with a two-step inquiry." *Hemans*, 2019 WL 955353, at *5. "A[t] the first step, the Court considers whether the [noncitizen's] detention has been unreasonably prolonged." *Id.* "If it has not, then there is no procedural due process violation." *Id.* "But if it has, the Court proceeds to step two and 'identifies the specific dictates of due process' by considering the *Mathews v. Eldridge* factors." *Id.* (alterations omitted) (quoting *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976)). "If the government has not provided the procedural safeguards dictated by the *Mathews* factors to a [noncitizen] subject to unreasonably prolonged detention, then his continued detention violates procedural due process." *Id.*

### 1.    Rodriguez's Detention

"[W]hen weighing the lawfulness of the continued detention of a [noncitizen] under the Due Process Clause," several factors determine whether detention is unreasonably prolonged. *Jamal A. v. Whitaker*, 358 F. Supp. 853, 858 (D. Minn. 2019).

This Court, for example, has considered "(1) the total length of detention to date; (2) the conditions of detention; (3) delays in the removal proceedings caused by the parties; and (4) the likelihood that the removal proceedings will result in a final order of removal."[6] *Hemans*, 2019 WL 955353, at *6.

First, and most important, courts consider the length of detention. Rodriguez has been in DHS custody since June 5, 2020—about 17 months. Docket Item 1 at 4; Docket Item 4-1 at ¶ 10. "As detention continues past a year, courts become extremely wary of permitting continued custody absent a bond hearing." *See Muse*, 409 F. Supp. 3d at 716 (and cases cited therein). In fact, courts have found detention even shorter than a year to be unreasonably prolonged as part of a procedural due process analysis.[7]

---

[6] The respondents argue that this Court also should consider whether Rodriguez's detention will exceed the time that he previously was incarcerated, the nature of Rodriguez's prior offenses, and the likely duration of Rodriguez's future detention. Docket Item 4-4 at 26-28. But as this Court previously has explained, "it makes little sense to compare 'different types of custody imposed for different reasons by different sovereigns' to determine whether federal immigration detention has become unreasonably prolonged." *Hemans*, 2019 WL 955353, at *6 n.4 (quoting *Muse v. Sessions*, 409 F. Supp. 3d 707, 715 n.3 (D. Minn. 2018)). And while the likely duration of future detention may bear on whether this Court grants relief under its equitable habeas powers, it offers little guidance on whether a petitioner's detention already has become unreasonably prolonged. *See id.*

[7] *See, e.g.*, *Sophia v. Decker*, 2020 WL 764279, at *4 (S.D.N.Y. Feb 14, 2020) (approximately seven months); *Vargas v. Beth*, 378 F. Supp. 3d 716, 727 (E.D. Wis. 2019) (approximately nine-and-a-half months); *Cabral v. Decker*, 331 F. Supp. 3d 255, 261 (S.D.N.Y. 2018) (more than seven months and more than nine months by the next removal-related hearing); *Hernandez v. Decker*, 2018 WL 3579108, at *1, *12 (S.D.N.Y. July 25, 2018) (nine months); *Sajous v. Decker*, 2018 WL 2357266, at *1, *12 (S.D.N.Y. May 23, 2018) (more than eight months); *Jarpa v. Mumford*, 211 F. Supp. 3d 706, 720 (D. Md. 2016) (more than ten months); *see also Sopo v. U.S. Attorney Gen.*, 825 F.3d 1199, 1217 (11th Cir. 2016) ("[A] criminal [noncitizen's] detention without a bond hearing may often become unreasonable by the one-year mark, depending on the facts of the case."). *But cf. Minaya-Rodriguez v. Barr*, 459 F. Supp. 3d 488, 497 (W.D.N.Y. 2020) (noting that the "procedural due process claims by petitioners detained for 6 to

In *Demore*, the Supreme Court upheld the constitutionality of section 1226(c), relying on the "very limited time of [] detention at stake" and noting that "in the majority of cases[, section 1226(c) detention] lasts less than the 90 days . . . considered presumptively valid in *Zadvydas*."  *Demore*, 538 U.S. at 529 & n.12; *see also id.* ("[I]n 85% of the cases in which [noncitizens] are detained pursuant to [section] 1226(c), removal proceedings are completed in an average time of 47 days and a median of 30 days.  In the remaining 15% of cases, in which the [noncitizen] appeals the decision of the Immigration Judge to the Board of Immigration Appeals, appeal takes an average of four months, with a median time that is slightly shorter." (citations omitted)).

Rodriguez's approximately seventeen-month detention is more than four times the four-month average cited in *Demore*.  The length of Rodriguez's detention therefore supports his argument that his detention without an individualized bond hearing has been unreasonably prolonged.

Second, courts consider the conditions of detention.  Whether "the facility for the civil immigration detention is meaningfully different from a penal institution for criminal detention" factors into the reasonableness of Rodriguez's detention.  *See Sajous*, 2018 WL 2357266, at *11 (citations omitted).  "The more that the conditions under which the [noncitizen] is being held resemble penal confinement, the stronger his argument that he is entitled to a bond hearing."  *Muse*, 409 F. Supp. 3d at 717.

The government has submitted the declaration of a BFDF employee regarding the conditions of Rodriguez's detention.  *See* Docket Item 4-3.  In that declaration, the

---

approximately 12 months while awaiting final orders in their immigration proceedings generally do not succeed—unless the government caused extreme delay or engaged in dilatory conduct").

government avers that the facility is unlike a prison because "most persons . . . are not locked in a cell," *id.* at ¶ 11; they "do not face the same level of restrictions typical of prison restrictions on inmates," *id.* at ¶ 9; and they "ordinarily may move throughout the [BFDF] without being required to wear handcuffs or legcuffs," *id.* at ¶ 16. "Six of the dorm units are open-dorm style," but three others—for detainees with criminal histories or female detainees—have cell doors that close at night. *Id.* at ¶ 11. And "persons held at BFDF [are] required to wear [] restraints [] when being booked in or booked out" or when they are "facing discipline [and are] brought to the Special Housing Unit ["SHU"]." *Id.* at ¶ 16.

In contrast, Rodriguez asserts that "[b]ecause of the cells, restraints, and discipline in the 'SHU[,]' conditions at BFDF 'resemble penal confinement.'" Docket Item 5 at 4. And Rodriguez maintains that "detainees with criminal convictions . . . are subject to even greater physical restrictions and [are] unable to access what limited privileges are available." *Id.*

Because of the cells, restraints, and discipline in the SHU, conditions at BFDF certainly "resemble penal confinement" for at least some persons detained there. *See Muse*, 409 F. Supp. 3d at 717. Moreover, this Court has previously found that conditions at BFDF are akin to prison conditions, especially for detainees such as Rodriguez who have criminal records. *See Barrie v. Barr*, 2020 WL 1877706, at *5 (W.D.N.Y. Apr. 15, 2020). This factor therefore weighs in Rodriguez's favor as well.

Third, courts consider whether the detainee has prolonged his own detention. The Second Circuit has found that this factor weighs against finding detention unreasonable when a noncitizen has "substantially prolonged his stay by abusing the

processes provided to him" but not when "an immigrant . . . [has] simply made use of the statutorily permitted appeals process." *Hechavarria*, 891 F.3d at 56 n.6 (first quoting *Nken v. Holder*, 556 U.S. 418, 436 (2009)).  As the Sixth Circuit has noted, "appeals and petitions for relief are to be expected as a natural part of the process.  [A noncitizen] who would not normally be subject to indefinite detention cannot be so detained merely because he seeks to explore avenues of relief that the law makes available to him."  *Ly v. Hansen*, 351 F.3d 263, 272 (6th Cir. 2003) (cited in *Hechavarria*, 891 F.3d at 56 n.6).  Indeed,

> although [a noncitizen] may be responsible for seeking relief, he is not responsible for the amount of time that such determinations may take.  The mere fact that [a noncitizen] has sought relief from deportation does not authorize the [government] to drag its heels indefinitely in making a decision.  The entire process, not merely the original deportation hearing, is subject to the constitutional requirement of reasonableness.

*Id*.

The government asserts that Rodriguez is to blame for part of his prolonged detention because he "continues to litigate before the Second Circuit" after his unsuccessful administrative appeal.  Docket Item 4-4 at 23.  But "appeals and petitions for relief are to be expected as a natural part of the process." *Ly*, 351 F.3d at 272.  So Rodriguez cannot be faulted simply for seeking review of his administrative determination.

On the other hand, Rodriguez is responsible for at least some of the delay in this case.  After the BIA dismissed Rodriguez's administrative appeal on February 11, 2021, he twice refused to speak with the Consulate General of Honduras and twice was served with a Form I-229(a), "Warning for Failure to Depart."  Docket Item 4-1 at ¶¶ 12-17.  Rodriguez then was served with a Notice of Failure to Comply under 8 C.F.R. §

241.4(g) on April 1, 2021.  *See id.* at ¶ 18.  All the while, DHS apparently was unable to

"effectuate [Rodriguez's] removal."  Docket Item 4-4 at 23.  So at least some part of

Rodriguez's prolonged detention can be attributed to him.  But even after excluding the

two months' delay that can be attributed to Rodriguez—that is, the time prior to

Rodriguez filing his petition for review and motion to stay in the Second Circuit—his

detention would still be approximately fifteen months.  So while this factor may weigh

somewhat against Rodriguez, it cannot justify his prolonged detention.

Finally, courts consider the likelihood that the removal proceedings will result in a

final order of removal.  But this Court declines to weigh the merits of Rodriguez's claims,

which currently are pending before the Second Circuit.

After balancing all these factors, this Court finds that Rodriguez's detention has

been unreasonably prolonged.  Therefore, this Court turns to the second step of the

two-part inquiry to determine what remedy his unreasonably-prolonged detention

demands.

### 2.    The Process Due to Rodriguez

"The fundamental requirement of due process is the opportunity to be heard 'at a

meaningful time and in a meaningful manner.'"  *Mathews*, 424 U.S. at 333 (quoting

*Armstrong v. Manzo*, 380 U.S. 545, 552 (1965)).  "[I]dentification of the specific dictates

of due process generally requires consideration of three distinct factors," *id.* at 335,

namely:  "(A) the private interest affected; (B) the risk of erroneous deprivation of that

interest through the procedures used; and (C) the governmental interest at stake,"

*Nelson v. Colorado*, 137 S. Ct. 1249, 1255 (2017).  Here, that analysis leads to the

conclusion that Rodriguez's continued detention without an individualized hearing, at

which the government must justify his continued detention by clear and convincing evidence, fails to "comport with the 'fundamental fairness' demanded by the Due Process Clause."  *See Schall v. Martin*, 467 U.S. 253, 263 (1984).

Rodriguez's interest in his freedom pending the conclusion of his removal proceedings deserves great "weight and gravity."  *Addington v. Texas*, 441 U.S. 418, 427 (1979).  He has an obvious interest in his "[f]reedom from imprisonment—from government custody, detention, or other forms of physical restraint."  *Zadvydas*, 533 U.S. at 690.  Moreover, while "[t]he private interest here is not liberty in the abstract, but liberty *in the United States*," *Parra v. Perryman*, 172 F.3d 954, 958 (7th Cir. 1999) (emphasis in original), Rodriguez has not conceded his deportability, and the resolution of that issue remains pending before the Second Circuit.  In fact, his interest in liberty *in the United States* must indeed be strong for him to subject himself to unreasonably-prolonged detention while contesting his deportability.  *See Fremont v. Barr*, 2019 WL 1471006, at *6 n.7 (W.D.N.Y. Apr. 3, 2019).

Rodriguez's filings provide little information about his ties to the United States that strengthen his interest from detention in this country as opposed to being free from detention in Honduras.  Rodriguez says that he has "several close relatives in the United States," Docket Item 5 at 3, but his parents, siblings, and children apparently all reside in Honduras, Docket Item 4-2 at 6.  *Cf. Landon*, 459 U.S. at 34 (losing "the right to rejoin [one's] immediate family [is] a right that ranks high among the interests of the individual").  But the government does not argue that Rodriguez lacks any such ties.  Because of Rodriguez's *pro se* status, and because "[t]his Court has come to believe that no rational person would subject himself or herself to unreasonably prolonged

detention in a jail-like detention facility unless that person's liberty interests in remaining in the United States are quite strong," *Fremont*, 2019 WL 1471006, at *6 n.7, the Court presumes that Rodriguez has a substantial interest in release from detention in the United States.

This Court recognizes that the government's interest in detaining Rodriguez also may be strong.  The government contends that Rodriguez's prior conviction "show[s] that he poses a high risk of danger to the community and suggest[s] a risk of flight." Docket Item 4-4 at 27.  And Rodriguez is detained under 8 U.S.C. § 1226(c), which applies to noncitizens who fall "into one of several enumerated categories involving criminal offenses and terrorist activities."  *Jennings v. Rodriguez*, 138 S. Ct. 830, 837 (2018).  "[Noncitizens] detained under [that] authority are not entitled to be released under any circumstances other than those expressly recognized by the statute."[8]  *Id*. at 846.  Thus, in mandating the detention of criminal noncitizens, the statute reflects a congressional purpose of reducing the risk of flight and danger to the community.  *See Demore*, 538 U.S. at 518-19 (explaining that Congress found that "deportable criminal [noncitizens] who remained in the United States often committed more crimes before being removed" and that "20% of deportable criminal [noncitizens] failed to appear for their removal hearings").[9]  "The government's interest in preventing crime by arrestees

---

[8] The exception from mandatory detention is a "limited authorization for release for witness-protection purposes," *Jennings*, 138 S. Ct. at 846, and is not applicable here.

[9] The Court noted that this number included noncitizens who were released from custody *without* an individualized bond hearing.  *Demore*, 538 U.S. at 519 n.4 ("Although the Attorney General had authority to release these [noncitizens] on bond, it is not clear that *all* of the [noncitizens] released were in fact given individualized bond hearings." (emphasis in original)).

is both legitimate and compelling."  *Salerno*, 481 U.S. at 749.  And general concerns about the risk of flight highlight the government's compelling interest in preserving its "ability to later carry out its broader responsibilities over immigration matters."  *Doherty*, 943 F.2d at 211.

### 3.    The Procedures Used Thus Far Are Insufficient to Justify Rodriguez's Prolonged Detention

Turning to the procedures used thus far in this case, before Rodriguez was taken into custody a DHS official notified Rodriguez that he would be detained pending the final administrative resolution of his case.  Docket Item 4-2 at 9.  And while Rodriguez apparently requested review of that determination by an IJ, *see id.*, nothing in the record suggests that Rodriguez has received a bond hearing since being taken into custody, *see* Docket Item 1 at 1.  In fact, section 1226(c) prohibits the government from offering a detainee the opportunity to challenge whether he or she is, in fact, a danger or a flight risk.  *Jennings*, 138 S. Ct. at 846.

This Court concludes that in light of the procedures used thus far, there is a significant risk that Rodriguez is being erroneously deprived of his liberty interests.  Now that his detention has become unreasonably prolonged, due process requires *some* opportunity to be heard "at a meaningful time and in a meaningful manner."  *Armstrong*, 380 U.S. at 552.

An opportunity to be heard in a meaningful manner necessarily requires a hearing that "satisfies the constitutional minimum of fundamental fairness."  *Santosky v. Kramer*, 455 U.S. 745, 756 n.8 (1982) (citation and internal quotation marks omitted).  When the government seeks the civil detention of a person to effect a compelling regulatory purpose, it must show by clear and convincing evidence that such detention

is necessary to serve that compelling interest.  *See Foucha v. Louisiana*, 504 U.S. 71, 81-83 (1992); *Addington*, 441 U.S. at 432-33; *see also Santosky*, 455 U.S. at 756 (explaining that the "clear and convincing evidence" standard applies "when the individual interests at stake in a [] proceeding are both 'particularly important' and 'more substantial than mere loss of money'" (quoting *Addington*, 441 U.S. at 424)).  That standard applies equally here.

To sustain the prolonged detention of a noncitizen subject to removal proceedings based on its general interests in immigration detention, the "[g]overnment [is] required, in a 'full-blown adversary hearing,' to convince a neutral decisionmaker by clear and convincing evidence that no conditions of release can reasonably assure the safety of the community or any person," *Foucha*, 504 U.S. at 81 (quoting *Salerno*, 481 U.S. at 751), or that the noncitizen will appear for any future proceeding.[10]  This requires consideration of less-restrictive alternatives to detention.  *See id*.; *cf. United States v. Playboy Entm't Grp., Inc.*, 529 U.S. 803, 816 (2000) ("When a plausible, less restrictive alternative is offered to a" regulation burdening a constitutional right, "it is the Government's obligation to prove that the alternative will be ineffective to achieve its goals.").

### C.    Conclusion

Rodriguez's section 1226(c) detention has been unreasonably prolonged. Because section 1226(c) does not require—indeed, does not permit—an individualized

---

[10] As this Court explained in *Hemans*, 2019 WL 955353, at *8 n.7, a pretrial detainee's right to a speedy trial distinguishes the interests supporting the evidentiary standard traditionally applicable to flight-risk determinations for pretrial detention purposes from what is required after an unreasonably-prolonged immigration detention.

hearing in which the government must demonstrate by clear and convincing evidence that no conditions of release can reasonably serve the government's compelling regulatory interests in detaining Rodriguez, it is unconstitutional as applied to him.  As such, his continued detention violates the Due Process Clause.

Rodriguez must be released unless, no later than **14 calendar days from the date of this decision and order**, the government demonstrates by clear and convincing evidence before a neutral decisionmaker that Rodriguez's continued detention is necessary to serve a compelling regulatory purpose—such as preventing flight or protecting others or the community.  The decisionmaker also must consider— and must address in any decision—whether there is clear and convincing evidence that there are no less-restrictive alternatives to physical detention, including release on bond in an amount the petitioner can reasonably afford, with or without conditions, that also would reasonably address those same regulatory purposes.

## IV.    EXCESSIVE BAIL CLAUSE

Rodriguez also argues that the "government's categorical denial of bail to certain non[]citizens violates the right to bail encompassed by the Eighth Amendment."  Docket Item 1 at 9.  The Excessive Bail Clause requires "that the Government's proposed conditions of release or detention not be 'excessive' in light of the perceived evil." *Salerno*, 481 U.S. at 754.  Although detention of criminal noncitizens during removal proceedings for only a brief period without individualized findings after a hearing is not "excessive in relation to the valid interests the government seeks to achieve," *Sankara v. Barr*, 2019 WL 1922069, at *9 (W.D.N.Y. Apr. 30, 2019) (alterations omitted) (quoting *Galen v. County of Los Angeles*, 477 F.3d 652, 660 (9th Cir. 2007)); *see Demore*, 538

U.S. at 519-21 (explaining Congress's interests in brief mandatory § 1226(c) detention),

the same cannot necessarily be said "after unusual delay in deportation hearings,"

*Carlson v. Landon*, 342 U.S. 524, 546 (1952).  But because this Court has determined

that due process requires that Rodriguez receive an individualized hearing, his claim

that the Excessive Bail Clause requires the same result is moot.

## ORDER

In light of the above, IT IS HEREBY

ORDERED that **within 14 calendar days of the date of this decision and order**, the government must release Rodriguez from detention unless a neutral

decisionmaker conducts an individualized hearing to determine whether his continued

detention is justified; and it is further

ORDERED that at any such hearing, the government has the burden of

demonstrating by clear and convincing evidence that Rodriguez's continued detention is

necessary to serve a compelling regulatory purpose, such as minimizing risk of flight or

danger to the community.  Whether detention is necessary to serve a compelling

regulatory purpose requires consideration of whether a less-restrictive alternative to

detention would also address the government's interests.  In other words, the

decisionmaker must find, by clear and convincing evidence, that no condition or

combination of conditions of release can reasonably ensure Rodriguez's appearance

and the safety of the community—that is, even with conditions, Rodriguez presents an

identified and articulable risk of flight or a threat to an individual or the community; and it

is further

ORDERED that **within 30 days of the date of this decision and order** the government shall file an affidavit certifying compliance with this order.  That affidavit should include a copy of the bond hearing order.


SO ORDERED.

Dated:          November 23, 2021
                Buffalo, New York


                                      _/s/ Lawrence J. Vilardo_
                                      LAWRENCE J. VILARDO
                                      UNITED STATES DISTRICT JUDGE